Case number 21-1097, Etta. Jane Doe, Petitioner for the Securities and Exchange Commission. Mr. McCoby for the Petitioner. Ms. Wagner for the Respondent. All right, Mr. McCoby, please proceed. Thank you. May it please the Court, Max McCoby on behalf of Petitioners. Good morning to everybody. Your Honor, Petitioners appeal the Securities and Exchange Commission's denial of whistleblower awards for the Novartis $25 million bribery settlement. Several years ago, the Commission settled with Novartis for $25 million based on Novartis' self-reported findings of bribing doctors to prescribe their pharmaceutical products, and the bribes were accomplished through travel and event planning. And when the settlement was finished, the Commission invited whistleblowers to submit award applications under their whistleblower award eligibility regulations, which is a led-to test. Did the whistleblower provide any original information that led to the successful $25 million settlement? Original information in the regulations is information not publicly known, but can include news articles relevant here. So long as the argument in the brief is, as I understand it, is that the SEC erred here because it limited whistleblower claims to the three circumstances listed in the rule, right? That's your argument. Two arguments. One is that. The other is we actually fit into one of the three patterns, but yes. Well, the Commission says, well, let's start with your first one. So, and you're arguing that this rule is clear, right? Because it didn't use the word only. That's correct. That's correct. It also doesn't use the word, it doesn't say among others or including. So you could really interpret this either way. I just, I don't, is that your only argument that it's clear is that the word only is not there? I just don't understand why that makes it clear. It seems to me the language, which says, it says in any of the following circumstances. Now, it doesn't say only in those, nor does it say in any of the following circumstances among others. So we just don't know, right? That's who we contend, Your Honor. If the Commission had intended only, it would have said only. And we highlighted very carefully the August of 2020 Securities and Exchange Commission order, which said that it does not, that language does not expressly state that the three components it was led to. That was their agency position until this litigation. And one of the arguments we make is we asked the court not to accord any deference to the fact that there were several cases where there's this, in the record, there's two more cases. There's one in 2018, and then another in 2020, where the Commission did reject whistleblower claims because they didn't fall into those three, one of those three categories, right? Your Honor, the only case that we're aware of where they actually commented on the meaning of the language, whether it was restrictive or whether it was broader, was this August 13, 2020 order where it said that it was not, that the language was the textual language, the natural reading, that that language did not expressly state that the three components were the only way to establish led to. They concede that. That was their official agency position. Yet they're changing it here during litigation. We ask that that not, that they should not be heard to change their position during litigation. But more to the point, a natural reading, we suggest, is not limited. And I think it's as simple as a patron going to a restaurant, and on the menu it says, you can have any of the following. You can have spaghetti marinara, bolognese, or carbonara, any of the following. I think a patron could naturally order buttered spaghetti. But if the menu said, no substitutions permitted, or only the following, I think a patron naturally would not order buttered spaghetti instead of marinara bolognese. I think it's as simple as that, as far as a natural reading of the text. We cited Supreme Court case Townsend v. Sane, and we cited a district court case that said, in the following circumstance, is not limiting. And the district court case said, if the government wanted it to be limiting, it would have used the word only. Yeah. Let me go back to an argument you made earlier. You said there were two arguments. One was, I think, that you said that the commission also, because it denied your claim under fact pattern two. Right, right. Commission said you didn't raise that before the commission. And then in your reply brief, you say you did raise it at page, I don't have the page number. You did say you raised it, but you didn't give a citation to where you did raise it. Do you have a site to where you raised it before the commission? Yes, we raised it at the very end. So in the appendix, in the final, when we submitted our objection to the preliminary denial, at the very end, the last footnote on that page, we stated we incorporated all of the arguments, all possible bases on the fact patterns in which to make the claim. So in the first application, we make a claim on everything. And then in the objection to the preliminary denial, we say we incorporate by reference all the arguments made in the initial application. So you're saying they were before the commissioners? I'm sorry? You're saying the argument was therefore before the commissioners in reviewing the initial decision? Yes. Yes. We applied on everything. And we, the site, we understood we properly cited it in the brief, but... Well, I didn't see, there's no citation in the brief. It's not there. That's why I asked you the question. It's the footnote in the appendix, if you read the appendix and you see the application and you see the objection to the preliminary denial, you'll see in the objection, we incorporate all the arguments made. My only point is I wouldn't have known that from your brief. That's all. I asked you where it is, so you've not told us. Okay. And so the SEC, I don't remember, did they address this in this decision or only in the preliminary decision? Sorry, your honor, the waiver issue? Is that the question? Yes. But did the commission in its final decision address that argument about fact pattern two? Yes, it did. It did. I found it. So it's note 20 in the final, in the objection, where we incorporate all the arguments we made in the original petition. But yes, the commission did deny on all grounds. They didn't just say that, they actually dealt with fact pattern two? Yes. Okay. Okay. So on that particular issue, your honor, we contend that we did satisfy that subsection two. The commission's argument boils down to adding language into subsection two that's not there. We provided the information to the commission, that's not disputed, albeit it was about a different company, but we provided it. We submitted that information along with the Wall Street Journal articles that we published, but it was submitted to the commission contemporaneous. And that information was material to the settlement. They admit that in paragraph 17 of their Novartis settlement order, virtually admit it, that our information was material and led to the settlement because it instituted the internal review by Novartis's and led to the $25 million settlement. So it's highly meritorious and it's deserving. The government tries to distinguish that fact pattern, the second element by saying, well, the information has to be about that particular company. Well, guess what? We provided that particular company, the word company is not in the text. It is in the subsection three, but not two. So that has to be understood as deliberate. And so you can only reach the decision the commission made if you read a word in there that's not there, i.e. that company, it's not there. So we contend we are- Well, aren't you overlooking that there's a step here, that is that the company is given an opportunity. And I'll ask Ms. Wagner can address that. You're overlooking that step. I mean, so you say something about another company, the statute first says company, you straighten this out. And if you're reporting on something other than Novartis, that wipes that step out. Your honor, I'm sorry. That's all right. I don't need an answer to that. If there are no more questions, then Ms. Wagner, we'll hear from you. Thank you. Good morning. May it please the court, Brooke Wagner from the Securities and Exchange Commission. Over a decade ago, at Congress's direction and following notice and comment, the commission promulgated the rule at issue here, rule 21F4C. At that time, the commission made clear that the rule required claimants to establish one of the three causal circumstances- Wait, wait, wait, what do you mean made clear? It doesn't say only in the rule. Why didn't the commission just put the word only in there? And you can make a very good argument that the commission knew how to use the word only because it used it in the footnote in the release document, but it didn't. In other words, the commission knows how to use the word only, knows how to spell it and knows how to use it, but it didn't put it in the regulation. Sure. And it's pretty hard to say. And also, well, why don't you just answer that question, first of all? Sure. Of course, the rule could have been clearer in that it could have included the word only. And I'll just note that to Mr. McAfee's point, that is all that we acknowledged in the August 2020 order. We didn't. Okay. So we're into, this is an ambiguous rule, right? The question is, do we defer? Correct? Well, I think if the court finds it ambiguous, it should defer. I think that even without the word only, I think that there's still the natural reading and the best reading of the rule in context. It's still that it is limited to the three circumstances. Maybe, maybe. But take a look at, take a look at release, I think it's 89-551, August 2020. It says, the commission says this one didn't satisfy any of the three fact patterns. And then here's what it says in its reasoning. It says, although rule 21F4C does not expressly state that the three components are the only way to establish it, it has been the commission's consistent practice. I mean, that's a pretty obvious, pretty clear concession by the commission that the rule is not clear, but it's been its practice to limit recoveries to one of the four facts circumstances, right? That's what that says. It states that it's not expressed, indeed. But it also acknowledges in a footnote, I think that there's nothing, as you say, there's nothing in the text that is clearly the other way. Okay, well that's, we're into, we're into, we're into ambiguously, right? Which brings up the question of deference. Sure. Right? Which, which the courts since Kaiser were, are much more subscribed now, correct? Sure. If we're talking about ambiguity, then we are looking at the guideposts under deference, but as we, guideposts under Kaiser. But as we explained in the briefs, the commission's interpretation here would easily satisfy each of those guideposts under Kaiser because it is authoritative, longstanding, consistent, considered, and it implicates the commission's law enforcement expertise and its experience administering the whistleblower program for over a decade. All right. Okay. Ms. Wagner, I'm just curious about SEC procedures. Are rules like this reviewed by the general counsel's office before they're issued? I believe the general counsel's office is generally involved in rulemaking. Well, I ask because, you know, with, with the courts being far more skeptical about deference to agency regulations, they're ambiguous. It would seem to me that an agency like the SEC would want to do everything it can to make sure its regulations are clear and not ambiguous. And this seems, you know, such an obvious example of a problem that could have been avoided simply by putting the word only in there. That's why I asked whether the general counsel reviews these things, because I would think anybody looking at this would have said, wait, this is not clear. We need to make it clear so that we don't get into trouble later with the courts. So you don't know whether they're reviewed by the, by the, by the general counsel's office? I think they were reviewed by the general counsel's office. Well, someone missed it. And I have to say, you know, this is, this has got to be one of the sloppiest regulations I've ever seen. Look, not only is it only not there, but you got three fact patterns. This fact pattern one ends with an or, and then it goes on the fact pattern two. And then fact pattern two ends with a period. I mean, I don't mean to be picky about this, but this is what we do. Courts do this thing to try to understand what the agency's doing. And why would the second one not have said or? Is that, is there something significant in that? Are we supposed to look at the third factor as somehow different from the first two? Candidly, my, my suspicion is that that's a drafting error because there were originally two circumstances and then the third was added later, but I agree. You need to, I'm only speaking for myself here, but you need to take at least from me a message back to the commission that they need to get their act together on these kinds of things. They need to, they need to avoid drafting errors at this point, but more important, they need to, they need to have clarity in their regulations. Otherwise you're going to have cases like this all the time. And the courts are increasingly skeptical about deferring to agency's interpretations of these kinds of regulations. So I understand, which I'm presuming this case long predates the Kaiser decision. It does. It does. Yes. Of course you've got an inventory of breaks that needs some review. Yeah, it does. But, but of course the drafting errors existed then and now. Of course we never want drafting errors, of course. Yeah. Ms. Wagner, counsel for the plaintiff here, petitioner here, said that the question, the issue, the claim that they fit, their facts fit into pattern two was raised before the commission and addressed by the commission in its final order. I cannot find that in the order and let alone in the petition before the agency. Is it there? No, it is not there. My understanding, they included a footnote in their objections to the preliminary determination that purported generally not to waive any position or argument that didn't raise this argument in particular. It didn't urge it before the commission. And so the commission's order, as you know, it has one paragraph where it says, notes that the petitioners appear to concede that they have not satisfied any of the three circumstances. And then it proceeds to explain why it's not appropriate to reward them despite not satisfying any of the three circumstances. So the commission didn't rule on the applicability of 21F or C2 here. All right. We have your argument. Ms. Wagner, if there are no more questions, I just want to rely on your brief. Yes, exactly. Thank you very much. All right. Thank you. Mr. McAbee, unless you have something or unless the court has questions for you, I think we have your argument as well. May I make just a couple of points? All right. Just quickly, we contend that the subsection two was not waived and that the commission did actually deny expressly on C2, C1, C2, and C3. So it says it. All right. You've already made that point. Okay. And then finally, we urge the court not to give deference. The Kaiser case specifically cites West Virginia Highlands Conservancy, which says that fee applications are well within the bailiwick of courts. It's not an EPA toxic waste complicated issue that requires agency deference. That is directly on point in this case as to why the court should not accord any deference on this issue. Thank you. We appreciate it. All right. Madam Clerk, if you'll call the next case.
judges: Henderson, Tatel, Ginsburg